UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMES CASE,<br><br>    Plaintiff,<br><br>    v.<br><br>HERTZ CORPORATION,<br><br>    Defendant. | Case No. 15-cv-02707-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE**<br><br>[Re: ECF 77] |

Plaintiff James Case filed a Second Amended Complaint ("SAC") on behalf of himself and similarly situated persons against Defendant The Hertz Corporation ("Hertz"), alleging that the employment application forms Hertz used in the course of its hiring process violated the "stand-alone requirement" of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(2)(A)(i). Hertz now moves under Fed. R. Civ. P. 12(b)(1) and 12(h)(3) to dismiss this case in its entirety for lack of subject matter jurisdiction, based on the U.S. Supreme Court's recent decision in *Spokeo v. Robins*, 136 S. Ct. 1540 (2016). Mot., ECF 77. For the reasons set forth below, the Court GRANTS Defendant's motion and dismisses the action without prejudice.

I. **BACKGROUND**

In early 2015, Case used Hertz's online application form (the "Online Job Application") to apply for employment with Hertz. SAC ¶ 23, ECF 74; Ex. 1 to SAC, ECF 74-1. Hertz reviewed the application and conditionally offered Case a position as a "transporter," pending the completion of a "background report." SAC ¶¶ 9, 26. Hertz asked Case to fill out a form entitled

"Request for Sterling Background Check" (the "Sterling Form") to allow Hertz's third-party consumer reporting agency, Sterling InfoSystems, Inc. ("Sterling"), to conduct a background report on Case. *Id.* ¶¶ 9, 27–28, Ex. 2 to SAC, ECF 74-2. Case filled out the application materials and Hertz procured a background check for Plaintiff from Sterling. SAC ¶¶ 24, 27–28. After receiving the background check, Hertz hired Case for the transporter position. Compl, ¶ 22.

Case alleges that the disclosures on the Online Job Application and the Sterling Form violated the FCRA's stand-alone requirement because they fail to provide "a clear and conspicuous disclosure made in writing, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes." SAC ¶ 64; *see also id.* ¶¶ 7–9, 29–39. Moreover, he alleges that Hertz's conduct in using these documents in the course of its hiring process amounted to a willful violation of the FCRA. *Id.* ¶¶ 43–54, 65. Case does not make any allegations regarding the accuracy or contents of the report.[1]

Case originally filed this action on June 17, 2015, and filed a First Amended Complaint on August 28, 2015. ECF 1, 21. Thereafter, Hertz filed a motion to dismiss, or, alternatively, to stay the action pending the Supreme Court's issuance of its decision in *Spokeo*. ECF 25, 27. The Court denied Hertz's motion to dismiss, but granted Hertz's motion to stay over Plaintiff's opposition. ECF 64. After the Supreme Court decided *Spokeo*, Case filed the operative complaint on behalf of himself and all other similarly situated persons. To address the Supreme Court's decision in *Spokeo*, Case advances two theories of standing: (1) invasion of privacy and (2) informational injury.

**II.   LEGAL STANDARD**

   **A.   Rule 12(b)(1)**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction. Under Article III of the U.S. Constitution, the Court has subject matter jurisdiction only if the party bringing the action has standing, an inquiry that addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication.

---

[1] The Court previously detailed the contents of these forms. *See* Order Denying Def.'s Mot. to Dismiss & Granting Def.'s Mot. to Stay 2–4, ECF 64.

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (citation omitted). When a defendant moves to dismiss under Rule 12(b)(1), the plaintiff, as the party seeking to invoke the court's jurisdiction by filing the complaint, bears the burden of establishing subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may attack the court's jurisdiction as it appears on the face of the complaint or by presenting affidavits and other evidence. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). For a facial attack, the court must "accept all allegations in the complaint as true and construe them in the light most favorable to the plaintiff[ ]." *Id.*

### B. *Spokeo* and Standing

In *Spokeo*, the Supreme Court reaffirmed that to have Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." 136 S. Ct. at 1547 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Here, it is undisputed that the alleged statutory violations are traceable to Hertz's conduct, and that the alleged violations are redressable by statutory damages. Accordingly, the remainder of the discussion on the standing issue is addressed solely to the requirement of injury in fact.

To establish injury in fact, a plaintiff must have suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560). To be "particularized," an injury "must affect the plaintiff in a personal and individual way." *Id.* (citing *Lujan*, 504 U.S. at 560 n.1). Here, it is undisputed that Case has alleged a particularized injury.

The Supreme Court in *Spokeo* distilled several "general principles" from its prior cases with respect to concreteness. *Id.* at 1549–50. A concrete injury is one that is "'real,' and not 'abstract.'" *Id.* at 1548 (citation omitted). Tangible injuries plainly satisfy this requirement. *Id.* at 1549. Nevertheless, intangible injuries may also be concrete. *Id.* In evaluating whether an intangible injury satisfies the "concreteness" requirement, the *Spokeo* Court identified two important considerations (1) "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American

3

courts" and (2) the judgment of Congress, which "'has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Id.* (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)).

The Supreme Court then elaborated on the connection between statutory standing and concrete injury. First, the Court explained that "Article III standing requires a concrete injury even in the context of a statutory violation[.]" *Id.* (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). Therefore, "[a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

At the same time, the Court observed, in cases where "harms may be difficult to prove or measure[,]" "the violation of a procedural right granted by statute can be sufficient . . . [and] a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id.* (citing *FEC v. Akins*, 524 U.S. 11, 20–25 (1998); *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989)). The Supreme Court noted that although one of the FCRA's purposes is to protect against inaccurate credit reporting, "not all inaccuracies cause harm or present any risk of harm." *Id.* at 1550.

**C.     The FCRA**

In relevant part, the FCRA provides that an employer must, in advance, provide a consumer with a clear and conspicuous written disclosure, and obtain the consumer's consent to procure a consumer report:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

§ 1681b(b)(2). The purpose of this and other provisions of the FCRA is to ensure fair and accurate credit reporting, protect consumer privacy, and promote efficiency in the banking system. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); 15 U.S.C. § 1681 (congressional

4

findings and statement of purpose).

## III. DISCUSSION

Case brings this claim for improper disclosure under section 1681b(b)(2), which forbids a person from procuring a consumer report without obtaining the consumer's express written consent in advance. Under the statute, the consumer's consent must be made on a single document that contains only required information that is "clear and conspicuous." Case claims that Hertz violated section 1681b(b)(2) by giving him two documents—the Online Job Application and Sterling Form—that contained extraneous information in addition to the required disclosures.

Hertz argues that Case has no standing to pursue this claim because he seeks statutory damages based solely on Hertz's bare procedural violation of the FCRA, divorced from any concrete harm. Mot. 1. Case responds that *Spokeo* did not alter constitutional requirements for standing, and that he has alleged two concrete injuries: violation of his right to privacy and an informational injury. Opp'n 1, ECF 79; SAC ¶¶ 55–56.

### A. Right to Privacy

Plaintiff alleges that Defendant invaded Plaintiff's and class members' right to privacy by procuring their background reports without complying with the FCRA's stand-alone disclosure requirement. SAC ¶ 55. Hertz argues that Case did not suffer an invasion of privacy because he knew that Hertz would procure a background check, and consented to the procurement of this report by voluntarily signing or electronically accepting multiple authorizations.[2] Mot. 9. Citing *Thomas v. FTS USA, LLC*, No. 13-cv-825, 2016 WL 3653878 (E.D. Va. June 30, 2016), Case contends that his signed authorization for Hertz to procure his background report was not "informed," and thus, it was "illegal" for Hertz to obtain Case's consumer report for employment purposes. Opp'n 9; *see also id.* at 1, 4, 6, 17, 21. Therefore, Case's position is that Hertz's

---

[2] Hertz also argues that Case does not allege that the information obtained for the background report was private. Mot. 10. Case contends that it is irrelevant that some of the information comes from public sources, because the act of consolidating it and providing it to a potential employer implicates privacy concerns. Opp'n 7. Because the Court agrees that Case consented to the background check, it declines to address this issue.

5

procurement of the background report in violation of the FCRA was an invasion of privacy. *Id.* at 9.

In reply, Hertz correctly distinguishes *Thomas* from the case at hand. Reply ISO Mot. 7–8, ECF 82. In *Thomas,* the plaintiff alleged that his former employer procured his and other class members' consumer reports without first providing the required written disclosure or obtaining the consumers' written consent, as required by the FCRA. 2016 WL 3653878, at *1. The plaintiff later learned that his employer had received his consumer report when he was denied continued employment based upon the inaccurate information contained in the report. *Id.* at *3. Here, in contrast, Case does not allege that the disclosure he received prevented him from understanding that he was authorizing Hertz to procure a background report or that had he would not have authorized Hertz to a background report had he received an FCRA-compliant disclosure. *See* Reply ISO Mot. 7. Indeed, there is no indication that Case could plausibly allege those facts. Instead, the crux of Case's complaint is that the consent form did not technically comply with the requirements of the FCRA. This is the kind of bare procedural violation that the Supreme Court described in *Spokeo*. *See, e.g.*, *Nokchan v. Lyft, Inc.*, No. 15-cv-3008, 2016 WL 5815287, at *4 (N.D. Cal. Oct. 5, 2016); *Larroque v. First Advantage LNS Screening Sols., Inc.*, No. 15-cv-4684, 2016 WL 4577257, at *4–5 (N.D. Cal. Sept. 2, 2016).

### B. Informational Injury

Case's alleged informational injury is also based on the consent form containing extraneous information. In support of his informational injury claim, Case relies on *Public Citizen*, 491 U.S. 440, and *Akins*, 524 U.S. 11. SAC ¶ 56. Both of these cases were cited by the Supreme Court in *Spokeo* as examples of a concrete harm being suffered when information authorized by statute was not supplied. In *Public Citizen*, the harm was the inability of the plaintiff to monitor the judiciary because the ABA refused to release documents that congressional statutes made open records. In *Akins*, the harm was an inability to obtain information regarding the American Israel Public Affairs Committee's membership, contributions, and expenditures that the plaintiffs believed were required by law.

Hertz attempts to distinguish *Akins* and *Public Citizen* by arguing that both cases involved

challenges to the government's failure to comply with a statutory obligation to disclose information of public concern.[3] Mot. 11–13. Case rejects this interpretation, and instead suggests that both cases support standing here because in *Akins* and *Public Citizen*, the Supreme Court rejected the idea that plaintiffs who were deprived of information they were entitled to receive had to demonstrate an additional injury—the deprivation of information itself sufficed to constitute the required injury for purposes of Article III. Opp'n 13. In reply, Hertz again emphasizes that *Akins* and *Public Citizen* involved government records. Reply ISO Mot. 11. Hertz also attempts to distinguish the cases Plaintiff cites, because there, the plaintiffs were actually deprived of information to which they were legally entitled whereas here, Case was provided with the information required by the FCRA, albeit along with other alleged extraneous information. Reply ISO Mot. 12; *see, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) (plaintiff was deprived of information to which she was legally entitled); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (same).

The Court agrees that the deprivation of statutorily mandated information can cause an intangible but concrete harm, if that harm is of the type Congress sought to prevent. Case, however, has not alleged that Hertz's disclosure form did not contain the information required by the FCRA. *Cf. Akins*, 524 U.S. at 21 ("[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." (citing *Pub. Citizen*, 491 U.S. at 449)). Instead, Case claims that the disclosure was not in the format required by the statute because it contained "extraneous" information. Further, Case was offered employment by Hertz. Absent some additional allegation of harm, the Court cannot find an informational injury based on the current record.

In light of the foregoing, the Court concludes that under *Spokeo* and the specific facts of this case, Plaintiff has failed to establish that he meets Article III's injury-in-fact requirement, and the motion to dismiss is GRANTED. Accordingly, the complaint is dismissed without prejudice

---

[3] Hertz also attempts to draw a distinction based on the purported importance of the rights at issue in *Akins* and *Public Citizen*. Mot. 12. However, such a determination is not essential to this motion, so the Court declines to make this distinction.

to refiling this action in state court.[4]

**IT IS SO ORDERED.**

Dated: November 21, 2016

_____
BETH LABSON FREEMAN
United States District Judge

---

[4] At the hearing, the parties agreed that where a federal court lacks subject matter jurisdiction over an action due to lack of Article III standing, dismissal without prejudice is appropriate.

8